**UNITED STATES of America, Appellant,**

v.

**James R. DARROW and Edith Darrow, James M. Burrell and C. Marie Burrell, James Martin and Virginia Martin, Appellees.**

**No. 8564.**

United States Court of Appeals
Tenth Circuit.

Oct. 14, 1966.

---

Robert C. McDiarmid, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Newell A. George, U. S. Atty., and Alan S. Rosenthal, Washington, D. C., were with him on the brief), for appellant.

James M. Burrell, pro se.

Before PICKETT, LEWIS and HILL, Circuit Judges.

LEWIS, Circuit Judge.

The United States appeals from an adverse and summary judgment of dismissal entered by the District Court for the District of Kansas in an action wherein the United States sought to foreclose two mortgages which were given to the Farmers Home Administration of the Department of Agriculture to secure farm purchase loans made by FHA under the Bankhead-Jones Farm Tenant Act, 7 U.S.C. § 1000 et seq. Included as defendants in the action were the original mortgagors and present possessors of the land, the Darrows and Martins respectively, none of whom appeared; the action was defended by the Burrells, present owners of the lands, who appeared pro se and are appellees here.

By its complaint, the United States alleged that in 1948 and 1949, the Darrows applied for and were granted two farm purchase loans to be repaid in 40 and 39 years together with interest at $3\frac{1}{2}$ percent per annum. The first loan money served to purchase approximately 140 acres of land which was taken as security in the mortgage. The second loan money was obtained to purchase an additional 80 acres of land which constituted further security for the 1949 mortgage. Contained as provisions of both mortgages was the specific obligation of the Darrows "personally and continuously to use said property as a farm, and for no other purpose; * * *" and, further, a provision reading as follows:

"13. That should Mortgagor assign, sell, lease, enter, into any share cropping agreement upon, transfer or encumber said property or any interest therein, voluntarily, involuntarily or otherwise, or should he abandon said property * * * or fail to keep, perform and comply with any covenant, warranty or condition in this instrument contained or referred to, without the consent of Mortgagee, or upon the death of Mortgagor, Mortgagee may declare the amount immediately due and payable and thereupon exercise any remedy provided herein or by law." [1]

The complaint contained allegations that on April 2, 1963, the Darrows sold the entire acreage to the Burrells, appellees, without the consent or knowledge of the Secretary of Agriculture but subject to the mortgages.

The answer of the Burrells admitted the fact of their purchase but otherwise denied all but the formal allegations contained in the complaint. The trial court, summarily and, in effect, upon its own motion dismissed the actions upon the grounds that it would be inequitable to allow the United States

---

1. This paragraph is from the second mortgage. A similar provision is in the first mortgage.

to foreclose its mortgages through enforcement of the provisions of paragraph 13 as earlier set out.

The thrust of the government's appellate argument is that the judgment of the trial court is premised upon political reasoning [2] and not legal rules. We must agree.

The United States in this action is seeking to accelerate the maturity of its mortgage pursuant to conditions contained therein that provide for such procedure in the event the mortgagors sell the lands, an event that is alleged and admitted to have happened. Paragraphs 13 of the mortgages were not inserted in the instruments as an administrative act intended to further the purposes of the Bankhead-Jones Farm Tenant Act, but in direct compliance with the mandate of the statute. Section 3(b) (6) of the Act provided in pertinent part:

"(b) The instruments under which the loan is made and security given therefor shall—

\*   \*   \*   \*   \*   \*

(6) provide that upon the borrower's assigning, selling, or otherwise transferring the farm, or any interest therein, without the consent of the Secretary, or upon default in the performance of, or upon any failure to comply with, any covenant or condition contained in such instruments, or upon involuntary transfer or sale, the Secretary may declare the amount unpaid immediately due and payable, and that, without the consent of the Secretary, no final payment shall be accepted, or release of the Secretary's interest be made, less than five years after the making of the loan  \*  \*  \*." 7 U.S.C. § 1003(b) (6) (Repealed August 8, 1961, P.L. 87–128, 75 Stat. 318).

Since Congress had specifically provided that the Secretary might accelerate the maturity of these mortgages, the existence of such discretion in the Secretary cannot be judicially questioned. And if, as the trial judge appears to believe so firmly, events subsequent to the passage of the Bankhead-Jones Farm Tenant Act now indicate that the Act's original worthy purposes cannot now be furthered by the acceleration of

---

2. The trial court was of the opinion that the purposes of the Bankhead-Jones Farm Tenant Act could not be served by enforcement in view of the modern economy. The court stated, in part:

"In 1937 when Congress enacted the Bankhead-Jones Act, the laudable objects and purposes of the law could not be effectively challenged. It would be most wholesome if a large percent of citizens could establish households on small· family farms and there sustain their livelihood as land and home owners and tillers of the soil. Here indeed would remain a huge segment of our population, exposed to the healthful vigor of the open spaces and supplied with the privilege and necessity of long hours of labor to maintain the fireside and meet the family obligations and financial commitments, including mortgage payments. Even then, political leaders realized the grave consequences that would follow a rapid exodus of farm families to the City where relief rolls and unemployment were serious problems.

World War II followed and the Court must take judicial notice of the fact that thereafter family farms of small acreage could no longer invite or retain on the land the most industrious and resourceful farmer. Absent of the farm work he is no longer able to sustain a family under any fair standard of living judged by present day standards, or announced by the President following a survey of the economic conditions of rural residents. Farms are increasing in size several fold. This must be so, else the operator cannot hope to sustain a marginal operation, let alone a profitable one. Farm income even now is gradually declining.

To enforce the covenant in plaintiff's mortgages which plaintiff now declares has been broken, is simply to fly into the fact [sic] of economic reality. The family farm, desirable as it may be is going the way of the horse drawn farm machinery, the outdoor sanitary facility and the pump and bucket water system.

\*   \*   \*   \*   \*

The market for a family farm which must be occupied by the owner and from which he must stretch out a livelihood and the mortgage payments in addition, does not exist."

the maturity of existing mortgages, such a change should be reflected in legislative expression and not in a naked judicial judgment. There is nothing in this record to indicate, and the court did not find, that the Secretary abused his statutory discretion in this particular case; and the court erred in holding that the subject mortgage provisions were unenforceable in general.

The judgment is reversed.